CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 27 2018

JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM TERRY BRADDOCK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:17-cv-00071 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPARMTENT OF MOTOR | ) | By: Hon. Jackson L. Kiser |
| VEHICLES, et al., | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Virginia Department of Motor Vehicles ("DMV"), Jeannie Thorpe, Terry Witt, Nancy Nolde, and Robert Irving's Motion to Dismiss Plaintiff William Braddock's Complaint. The issue was briefed by the parties and I heard arguments in open court on March 22, 2018. For the reasons stated in open court and set forth more fully herein, I will grant the Motion to Dismiss and afford Plaintiff the opportunity to file an amended complaint, if he so chooses.

## I.      STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Plaintiff, who is proceeding *pro se*, alleges in a form complaint that he was employed by the DMV. He asserts that his "position was filled after going out on medical leave in April 2015." He further alleges that he was "placed in a different position that was not a real position, only a token gesture, after complaining." He also claims he was retaliated against, saying that "[r]etaliation continued in numerous forms through process."

---

[1] The facts are taken from Plaintiff's *pro se* Complaint. As this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although not included in his Complaint, but filed by the Defendants, Plaintiff's Charge of Discrimination says that he requested time off in April 2015 as a "reasonable accommodation" and was out of work until September 2015. While he was out, his employer filled his position and, when he returned, he was placed in a Generalist position. He asserts that these actions were in violation of the Americans with Disabilities Act of 1990, as amended ("ADA").

## II.    STANDARD OF REVIEW

When a challenge to subject matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. "The court must grant the motion 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Little v. Stock Bldg. Supply, LLC, Case No. 4:10-cv-129, 2011 WL 5146179, at *3 (E.D.N.C. Sept. 2, 2011) (quoting Richmond, 945 F.2d at 768). Generally speaking, allegations of Eleventh Amendment immunity, like those raised by DMV and the individual defendants, are treated as challenges to subject matter jurisdiction. See, e.g., Edelman v. Jordan, 415 U.S. 651, 677–78 (1974).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### III. DISCUSSION

Defendants' various arguments for dismissal are addressed in turn.

A. Dismissal pursuant to FRCP 8(a)

Defendants' seek dismissal because the Complaint lacks "a short and plain statement of the ground's for the Court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Although *pro se* complaints are afforded liberal construction, Defendants point out that district courts are not "required to conjure up and decide issues never fairly presented to them." Beaudett v. City of Hampton, 775 F.32d 1274, 1276 (4th Cir. 1985).

Although Plaintiff's Complaint is lacking, the primary fault is the court's form complaint. Plaintiff answered every questions posed, and thus any omission is not grounds for dismissal, but for either a more definite statement of his claim, see Fed. R. Civ. P. 12(e), or an amended pleading.

B.  Lack of Subject Matter Jurisdiction

Defendants next argue that the Court's jurisdiction is not established because Braddock has not alleged it.  It is apparent from the face of the Complaint and other outside evidence, including Plaintiff's charge of discrimination, see Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991), that Plaintiff is asserting claims that arise under federal law.  The court's jurisdiction to hear claims under the Americans with Disabilities Act is well-established, and the Court's jurisdiction is established.

C.  Eleventh Amendment Immunity

For their third argument, Defendants argue that the Eleventh Amendment bars suit against the DMV and the individual defendants in their official capacities.  To the extent Plaintiff is asserting a claim under the ADA, the Eleventh Amendment bars the suit against the state or state instrumentalities.

The DMV and its employees, acting in their official capacities, are state instrumentalities entitled to immunity.  Miller v. Geico Auto Insurer, Case No. 7:04CV00702, 2005 WL 1684024, at *1 (W.D. Va. July 19, 2005) (dismissing action against the DMV under the Eleventh Amendment); see also Brown v. North Carolina Division of Motor Vehicles, 166 F.3d 698 (4th Cir. 1999) (holding that the ADA did not abrogate Eleventh Amendment immunity).  As such, insofar as Plaintiff seeks money damages as to the DMV and the individual defendants *in their official capacities*, the suit would be barred.[2]  See Ex Parte Young, 209 U.S. 123 (1908)

---

[2] The Eleventh Amendment's bar to suit is not absolute, however. There are three recognized exceptions. First, Congress may abrogate state sovereign immunity. See Bd. of Trustees of Univ. Ala. v. Garrett, 531 U.S. 356, 363 (citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 79 (2000)). The Fourth Circuit has held that Congress's attempted abrogation of the Eleventh Amendment in the ADA was ineffectual.  See Brown v. North Carolina Division of Motor Vehicles, 166 F.3d 698 (4th Cir. 1999).  Second, a state can waive its Eleventh Amendment immunity. See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618 (2002).  It does not appear that Virginia has done so.  Third, a plaintiff can seek relief under the

(permitting federal jurisdiction where a suit against a state official seeks only prospective injunctive relief in order to end a continuing violation of federal law).

That, however, does not end the matter. While the Eleventh Amendment bars suit for *money damages* against the state and its instrumentalities, it does not bar suits that seek prospective injunctive relief, suits where the state has consented to suit, or suits where Congress has abrogated the relevant immunity. Until Plaintiff clarifies his theory or theories of recovery, it is premature to pass on Defendants' Eleventh Amendment arguments. Compare Coleman v. Md. Court of Appeals, 626 F.3d 187, 193–94 (4th Cir. 2010) (holding that Congress's abrogation of the Eleventh Amendment was not valid as to FMLA's self-care provision), with Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 738 (2003) (finding valid the abrogation of the Eleventh Amendment as to FMLA's family-care provision).

D. Dismissal against the individual defendants because they are not "employers"

Neither Title VII nor the ADA provides a remedy against individual defendants who do not qualify as "employers." See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir. 1998) (Title VII); Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999). Plaintiff has not alleged what role, if any, the individuals played in his claim, and thus he has failed to allege that any of them acted as his employer. In his amended complaint, Plaintiff will need to be specific about what actions were taken by which individuals.

E. Plaintiff Has Failed to State a Claim for Retaliation

Defendants' final argument is that, under FRCP 12(b)(6), Plaintiff has failed to state a claim for retaliation. On this point, they are correct. To state a claim for retaliation, Plaintiff must show: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a

principles set forth in Ex Parte Young. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex Parte Young, 209 U.S. 123 (1908)).

causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190. Presumably Plaintiff has alleged a protected activity: requesting a "reasonable accommodation" of time off. He has failed, however, to plead an adverse employment action. Plaintiff states that, when he returned from leave, he was not returned to his former position, but to a Generalist position, which he contends was only a "token role." He does not state, however, any facts that make such a change an adverse employment action. He offers no facts to show that the move to a Generalist position affected the "terms, conditions or benefits" of his employment. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). Without such a showing, there can be no violation of the ADA and a claim for retaliation would necessarily fail as well. Cf. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).

Alternatively, Plaintiff states that he filed a grievance but "the Agency diverted the process from a hearing, It [*sic*] was not heard." (Compl. ¶ 9.E.) Without knowing the content or nature of the grievance, it is impossible to know whether the grievance concerned a protected activity. For example, if the grievance concerned a different job placement at the same salary with the same benefits, filing the grievance was not a protected activity because reassignment to another job, in and of itself, is not an adverse employment practice. "[R]eassignment to a less appealing job is not an adverse employment action unless it has a 'significant detrimental effect,' such as a 'decrease in compensation, job title, level of responsibility, or opportunity for promotion.'" Gordon v. Gutierrez, Case No. 1:06cv861, 2007 WL 30324, at *7 (E.D. Va. Jan. 4, 2007) (quoting Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. V. White, 548 U.S. 53, 67 (2006)). If a grievance was filed,

the court needs to know the facts underlying the grievance to determine if a claim has been stated.

F. Other Theories of Recovery

Even giving Plaintiff the lenient review standard applicable to *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), I am bound to conclude that he has failed to state a claim under any theory that has been mentioned, either on brief or in court.

To state a failure-to-accommodate claim under the ADA, Plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Mitchell v. Washingtonville Cent. School Dist., 190 F.3d 1, 6 (2nd Cir. 1999). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such impairment," or "being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1) (2017).[3] Plaintiff has failed to allege the existence of, record of, or his being regarded as having a disability, or whether he was able to perform his job with or without a reasonable accommodation.

To state an interference claim under the Family Medical Leave Act ("FMLA"),[4] see 29 U.S.C. § 2615(a)(1), either in addition or as opposed to any other claim, Plaintiff must first

---

[3] The ADA makes it unlawful for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . ." 42 U.S.C. § 12112(b)(5)(A) (2017). A "qualified individual with a disability" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

[4] The Fourth Circuit has summarized the relevant rights and protections of the FMLA as follows:

"prove that [he] was afflicted with an FMLA-qualifying condition, because otherwise [he] did not have any right under the Act with which [his] employer could have interfered." Rhoads v. F.D.I.C., 257 F.3d 373, 384 (4th Cir. 2001). Plaintiff must then show: (1) "that the employer violated [29 U.S.C.] § 2615 by interfering with, restraining, or denying his . . . exercise of FMLA rights"; and (2) that he "has been prejudiced by the violation." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). Actions that constitute "interfering with" an employee's FMLA rights include "refusing to authorize FMLA leave", "discouraging an employee from using such leave"; "avoid[ing] responsibilities under FMLA"; and "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions." Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d, 847, 870 (D. Md. 2000) (quoting 29 C.F.R. § 825.220(b)–(c)). Prejudice exists if "compensation and benefits [are] lost 'by reasons of the violation,' § 2617(a)(1)(A)(i)(I), . . . other monetary losses [are] sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II)," or the employee is denied "employment, reinstatement, [or] promotion, § 2617(a)(1)(B)." Ragsdale, 535 U.S. at 89. In the present case, Plaintiff has failed to allege facts sufficient to establish the threshold issue necessary to state an

---

The FMLA provides covered employees with two types of rights and protections. First, covered employees who take a leave of absence for family or medical reasons qualify for numerous substantive entitlements. Specifically, these employees are "entitled to a total of 12 workweeks of leave during any 12–month period" for family- and health-related matters, [29 U.S.C.] § 2612(a)(1), and have a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment[," id.] § 2614(a)(1)(A)-(B). Leave taken under the FMLA "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." Id. § 2614(a)(2). However, a restored employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." Id. § 2614(a)(3)(B).

Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006).

FMLA claim—that his leave was qualifying. Moreover, he has failed to allege facts sufficient to show that his new position upon his return was prejudicial in a legally significant way.

To state a retaliation claim under the FMLA, see 29 U.S.C. § 2615(a)(2), either in addition or as opposed to any other claims, Plaintiff must allege: "(1) he engaged in a protected activity," such as taking FMLA leave, (2) "the employer took adverse action against him," and (3) "the adverse action was causally connected to [his] protected activity." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). Plaintiff may show a causal connection either by showing close temporal proximity between the adverse employment decision and the protected activity, Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989), or by showing that he was performing at a satisfactory level prior to taking FMLA leave Sharpe v. MCI Telecommunications Corp., 19 F. Supp. 2d 483, 488 (E.D.N.C. 1998). Again, as stated above, Plaintiff has failed to plead facts sufficient to show the threshold issue of whether he engaged in a protected activity, namely, taking FMLA leave.

Despite any other jurisdictional or formatting flaws in Plaintiff's Complaint, the bottom line is that his current pleading lacks sufficient facts for the Court to make an informed ruling on his claims. Accordingly, Plaintiff will be afforded fourteen days to file an amended complaint, if he so chooses.[5]

IV.    **CONCLUSION**

At this stage, Plaintiff's Complaint lacks sufficient factual support to proceed. In an effort to reach the merits of his case, see Metropolitan Liquor Co. v. Heublein, Inc., 50 F.R.D. 73 (E.D. Wisc. 1970), I will permit him to file an amended complaint within fourteen (14) days from the date of the accompanying Order.

---

[5] By permitting Plaintiff to file an amended complaint, I make no judgment on whether any potential claim is valid. He should not interpret the option to file an amended pleading as a guarantee that his amended complaint will pass legal muster.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Plaintiff and all counsel of record.

Entered this 27th day of March, 2018.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE